UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SYDNE KEL MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-CV-436 |
| | ) | |
| vs. | ) | Judge |
| | ) | Magistrate Judge |
| UNION COUNTY, | ) | |
| UNION COUNTY SHERIFF | ) | |
| SCOTT HARVEL, in his official capacity, | ) | |
| Union County Sheriff's Deputies, | ) | Jury Demand |
| CODY GWALTNEY, | ) | |
| Sgt. ROBERT McGEE, and | ) | |
| LOGAN MILLER, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983, and the common law and statutes of the State of Illinois.

2. Jurisdiction for Plaintiff's federal claims is based on 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction for Plaintiff's state claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## Parties

4. Plaintiff is a resident of Anna, Illinois.

5. Plaintiff suffers from mental illness; a psychotic disorder, depression, and takes medication.

6. Defendant-Officers are duly appointed and sworn Union County Sheriff's Deputies. At all times relevant to this Complaint, the Defendant-Officers were acting in the course and scope of their employment, and under color of state law, ordinance and/or regulation.

7. Defendant-Officers are sued in their individual capacities.

8. At the time of the occurrence, Defendant-Officer Sgt. ROBERT McGEE was the supervising officer of Defendant-Officer CODY GWALTNEY.

9. At the time of the occurrence, Defendant SCOTT HARVEL was the Union County Sheriff, and the employer of Defendant-Officers.

10. Defendant HARVEL is a defendant pursuant to *respondeat superior*.

11. UNION COUNTY is the indemnifying entity for actions taken by Defendant HARVEL and/or his employees, including Defendant-Officers.

## Facts

12. On or about May 15, 2019, at approximately 9:00pm, Plaintiff was operating her motor vehicle in the City of Anna, Union County, Illinois, when Defendant-Officer GWALTNEY conducted a traffic stop of Plaintiff's vehicle for allegedly not having its headlights on.

13. Upon approaching Plaintiff's vehicle, GWALTNEY claimed that while speaking to Plaintiff he allegedly noticed that Plaintiff was slurring her words, and that he could smell the faint odor of alcohol.

14. GWALTNEY asked Plaintiff to step out of her vehicle in order to conduct field sobriety tests.

15. At the time GWALTNEY was being assisted by City of Anna Police Officer Jeremy Reagan, and Defendant-Officer Sergeant McGEE.

16. GWALTNEY administered several different field sobriety tests; the Horizontal Gaze Nystagmus test, the Walk and Turn test, and the One Leg Stand test.

17. Plaintiff was unable to perform either the Walk and Turn test or the One Leg Stand test (according to GWALTNEY's incident report Plaintiff put her leg down 3 different times while trying to perform the One Leg Stand test).

18. GWALTNEY then asked Plaintiff if she would do a Preliminary Breath Test, and Plaintiff stated she would; Plaintiff completed the Preliminary Breath Test.

19. The results came back a .299 on the Preliminary Breath Test (it should be noted that GWALTNEY indicated in his incident report that the results came back at "2218hrs", which if correct would have been approximately the time at which Plaintiff was already being rushed to the Union County Hospital ER with severe injuries inflicted upon her by GWALTNEY in the holding cell of the Union County Sheriff's Office).

20. GWALTNEY then advised Plaintiff that she was being placed under arrest for driving under the influence.

21. It was at this time that the *three* law enforcement officers, GWALTNEY, McGEE, and Anna Police Officer Jeremy Reagan attempted to control the Plaintiff in order to place handcuffs on her; the Plaintiff is a female age 26, 5'5" tall and 112 lbs.

22. Plaintiff was placed face down on the ground in the grass off of the road.

23. GWALTNEY alleges (with the assistance of both McGEE and Anna Police Officer Jeremy Reagan) that Plaintiff could not be sufficiently controlled so that she could be handcuffed.

24. GWALTNEY, with intent, and utter indifference and conscious disregard for the safety of Plaintiff, proceeded to pull out his taser and drive stunned Plaintiff on her lower back in order to place both of Plaintiff's wrists in the handcuffs.

  a. Plaintiff should have been able to be safely controlled by three (3) law enforcement officers with other force options.

  b. Defendant-Officer Sergeant McGEE, GWALTNEY's supervising officer, with deliberate indifference to the safety of Plaintiff, made no attempt to intervene and prevent GWALTNEY from using his taser.

  c. GWALTNEY failed to provide Plaintiff an explicit verbal announcement of his intent to use his taser in order to give Plaintiff a reasonable opportunity to voluntarily comply.

  d. Plaintiff was already face down on the ground, and could not have been an immediate, credible threat to the physical safety of GWALTNEY, McGEE, or Anna Police Officer Jeremy Reagan.

    e.    Plaintiff did not display the intent to engage in aggressive physical resistance, and was in no position to engage in active physical resistance which could have exceeded the ability of three (3) law enforcement officer's ability to control her; Plaintiff did not attack, nor did she have the ability to carry out an attack or cause injury to either GWALTNEY, McGEE or Anna Police Officer Jeremy Reagan.

25.    GWALTNEY, with the assistance of Anna Police Officer Jeremy Reagan, then picked up the Plaintiff, placed her in the back seat of his patrol car, and proceeded to transport her to the Union County Sheriff's Office.

26.    McGEE stayed behind to conduct the inventory on Plaintiff's vehicle and wait for the towing service to retrieve the vehicle; there was also a dog in the vehicle, and McGEE was told that dispatch had already contacted animal control, and he was waiting for them to arrive.

27.    Dispatch had also contacted Plaintiff's father, Scott Miller, and informed Mr. Miller that Plaintiff's vehicle had been pulled over.

28.    Scott Miller, Plaintiff's father, arrived on the scene while McGEE was still waiting for the towing service and animal control.

29.    McGEE stated in his incident report that Mr. Miller told him that the Plaintiff had recently been in a mental facility and was on medication.

30.    McGEE failed to radio dispatch with this information, and as a result, neither GWALTNEY nor Defendant-Officer MILLER was made aware of Plaintiff's mental condition.

31.    MILLER met GWALTNEY in the sally port of the Sheriff's Office to assist him in moving Plaintiff from his vehicle to the holding cell.

32.    Plaintiff's arms were handcuffed behind her back.

33.    GWALTNEY and MILLER placed Plaintiff in the holding cell, leaving her handcuffed behind her back, per Union County Sheriff's department policy, as noted by MILLER in his incident report.

34. GWALTNEY and MILLER then began to exit the holding cell; MILLER was standing just behind GWALTNEY; MILLER was the first to exit, and then GWALTNEY started to exit (as viewed in the audio/video from inside the holding cell).

35. As GWALTNEY was about to exit the holding cell, Plaintiff "walked" (not "charged" as stated by GWALTNEY in his incident report, verified by the audio/video from inside the holding cell) back towards GWALTNEY.

36. As Plaintiff came closer to GWALTNEY, without any lawful justification, GWALTNEY violently and brutally, with malicious intent, and deliberate indifference and conscious disregard for the safety of Plaintiff, shoved Plaintiff, still handcuffed behind her back, with both arms and with such force as to cause Plaintiff to fall face first on the concrete ground of the holding cell, causing Plaintiff to suffer a broken jaw.

37. MILLER, who was standing just behind GWALTNEY, made no attempt to intervene to prevent GWALTNEY's violent and heinous misconduct.

38. As Plaintiff hit the concrete floor and instantly began bleeding from her mouth and chin area, MILLER exclaimed, in a spontaneous declaration, "Oh Shit!" (as heard in the audio/video from inside the holding cell), realizing that what he had just witnessed GWALTNEY do, and took no steps to prevent, was a brutal, unjustified act of excessive force.

39. EMS was contacted by dispatch, receiving the call at approximately 10:02pm, arriving at approximately 10:06pm, departing the scene at approximately 10:16pm, and arriving at Union County Hospital ER at approximately 10:21pm.

40. According to the Union County Hospital ER Attending Physician, Plaintiff presented with the following: injury to the head, 3cm laceration to the chin, 2cm laceration to the bottom lip that was through and through, pain, memory problems, seizure, vomiting, and blood draining from her ears (symptoms consistent with concussion); according to the medical report, her condition was listed as "severe."

41. St. Francis Hospital Trauma in Cape Girardeau, Missouri, was consulted for possible transfer to a facial trauma surgeon; however, no surgeon was on call.

42. At approximately 12:42am, now May 16, 2019, Barnes Jewish Hospital in St. Louis, Missouri was consulted, and it was recommended that Plaintiff be transferred to their trauma unit: Diagnosis are fracture of mandible, unspecified, sequela – fracture of symphysis, angle and ascending ramus; Plaintiff was then transported by ambulance to St. Louis, Missouri.

43. On May 31, 2019, Plaintiff underwent surgery to repair the above described fracture to her jaw, commonly referred to as "TMJ" (temporomandibular joint) surgery; her jaw was wired shut.

44. Each individual Defendant-Officer acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

45. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages including extreme physical pain and suffering, emotional distress, and pecuniary damages including medical expenses.

46. As a direct and proximate result of the acts of the Defendants described above, Plaintiff continues to this day to suffer extreme physical pain and suffering, and has suffered a relapse of her mental disorder, requiring admission to a mental facility.

## COUNTS I & II
### (42 U.S.C. § 1983 – Excessive Force)

47. Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

48. Defendant GWALTNEY violated Plaintiff's Fourth Amendment right, as guaranteed by the Fourteenth Amendment, to be free from the use of excessive and unreasonable force as to each of the above detailed incidents of excessive force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant GWALTNEY,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNTS III & IV
### (42 U.S.C. § 1983 – Failure to Intervene & Supervisor Liability)

49. Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

50. While Plaintiff was subjected to excessive force, Defendant Sgt. McGEE had an opportunity to intervene, but chose not to intervene.

51. McGEE was the supervising officer of Defendant GWALTNEY.

52. McGEE was deliberately indifferent to Plaintiff's right to be free from excessive and unreasonable force for both his failure to intervene and in his capacity as GWALTNEY's supervising officer.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant McGEE,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT V
### (42 U.S.C. § 1983 – Failure to Intervene)

Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

53. While Plaintiff was subjected to excessive force, Defendant MILLER had an opportunity to intervene, but chose not to intervene.

54. MILLER was deliberately indifferent to Plaintiff's right to be free from excessive and unreasonable force.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant MILLER,

b) Award Plaintiff compensatory and punitive damages,

c) Award attorneys' fees and costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT VI
### (42 U.S.C. § 1983 – *Monell* Claim against the SHERIFF SCOTT HARVEL)

55. Plaintiff realleges all of the above paragraphs and counts, as if fully set forth herein.

56. At all times material to this Complaint, there existed in the following practices, policies and customs within the Union County Jail:

   a. arbitrary use of excessive force against pretrial detainees;

   b. failure to deter sheriff deputies from the type of misconduct alleged in this Complaint, by its lack of discipline for misconduct.

   c. failure to remove handcuffs from pretrial detainees after they have been placed into the holding cell.

   d. failure to properly train sheriff's deputies in the proper use of taser devices, and under what circumstances the situation justifies the use of a taser device.

   e. failure to provide proper medical attention for pretrial detainees with mental health disorders.

   f. failure to properly train sheriff's deputies in how to handle pretrial detainees with mental health disorders.

   g. failure to properly train sheriff's deputies in how to handle information learned regarding mental health disorders of pretrial detainees, and the importance of communicating that information to other sheriff's deputies who may come into contact with those pretrial detainees.

57. That it is believed and highly likely that discovery in this matter regarding the actions of the correctional officers as alleged in this Complaint were done pursuant to, and as a result of the above *de facto* practices, policies and customs.

58. That it is believed and highly likely that discovery in this matter regarding the practices, policies and customs described above are widespread, permanent and well-settled, and were known, or should have been known, to the policy-makers of the Union County Jail.

59. Defendant SCOTT HARVEL has final policy-making authority and is responsible for the above-described policies, practices and customs.

60. SCOTT HARVEL acted with deliberate indifference to the rights of Plaintiff in maintaining, overlooking and preserving the unconstitutional practices, policies and customs delineated above.

61. By his inaction and failure to correct the above-described practices, policies and customs, SCOTT HARVEL tacitly approved and thus indirectly authorized the type of misconduct Plaintiff complains of herein.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against SCOTT HARVEL;

b) Award Plaintiff compensatory damages, as determined at trial;

c) Award Plaintiff attorney's fees and costs;

d) Award such other and additional relief that this Honorable Court deems just and equitable.

## COUNTS VII & VIII
### (State Law Claim for Battery)

62. Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

63. Defendant GWALTNEY, without any lawful justification, tased Plaintiff.

64. Defendant GWALTNEY, without any lawful justification, shoved Plaintiff to the ground, causing Plaintiff to suffer severe injuries.

65. Defendant GWALTNEY intentionally, and without any lawful justification, made offensive bodily contact against Plaintiff and inflicted harm to Plaintiff.

66. Defendant GWALTNEY performed the acts detailed above with the intent of inflicting physical harm to Plaintiff. Plaintiff was physically harmed.

67. As a direct and proximate result of each of the above detailed acts of battery, Plaintiff was injured.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant GWALTNEY,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT IX
### (State Law Claim for Intentional Infliction of Emotional Distress)

68. Plaintiff realleges paragraphs 1 through 46 as if fully set forth herein.

69. The conduct by Defendant GWALTNEY described herein was extreme and outrageous, exceeding all bounds of human decency.

70. Defendant GWALTNEY performed the acts detailed above with the intent of inflicting severe emotional distress on Plaintiff or with knowledge of the high probability that the conduct would cause such distress.

71. As a direct and proximate result of this conduct, Plaintiff did in fact suffer severe emotional distress, resulting in injury to her mind, body, and nervous system.

WHEREFORE, Plaintiff asks that this Honorable Court:

a) Enter judgment against Defendant GWALTNEY,

b) Award Plaintiff compensatory and punitive damages,

c) Award costs, and

d) Award any further relief that this Honorable Court deems just and equitable.

## COUNT X
### (State Law *Respondeat Superior* Claim)

72. The acts of the Defendant GWALTNEY described in the above state-law claims for battery and intentional infliction of emotional distress were willful and wanton, and committed in the scope of his employment.

73. Pursuant to *respondeat superior*, Defendant SCOTT HARVEL is liable for its agents' actions.

WHEREFORE, Plaintiff demands judgment against Defendant SCOTT HARVEL, and such other and additional relief that this Honorable Court deems just and equitable.

## COUNT XI
**(Indemnification Claim pursuant to 745 ILCS 10/9-102)**

74. The acts of the Defendant-Officers described in the above claims were willful and wanton, and committed in the scope of employment.

75. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant UNION COUNTY is liable for any judgments in this case arising from the Defendant-Officers' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant UNION COUNTY to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions.

**Jury Trial Demanded**

        Respectfully submitted,

        /s/ William B. Ballard, Jr.
*Counsel for the Plaintiff*

William B. Ballard, Jr.
William Ballard & Assoc., LLC
500 South Main Street
Anna, Illinois 62906
(618) 833-6432
wmballard1@frontier.com